IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES MACON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | )  Civil Action No. 06-300 |
| KINGS FAMILY RESTAURANT, | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

## OPINION and ORDER OF COURT

### SYNOPSIS

Pending is Defendant's, King's Family Restaurant's, Motion for Summary Judgment relating to Plaintiff's claims of age and gender discrimination. (Docket No. 21). Plaintiff responded thereto. Based on my Opinion set forth below, said Motion is denied.

### I. BACKGROUND[1]

Plaintiff, James Macon, began working for Defendant, King's Family

---

[1] The relevant facts stated herein are taken from the admitted statement of undisputed material facts. *See,* Docket Nos. 28 and 31.

Restaurant, on September 19, 1979, as a bus boy.  After holding several positions, Plaintiff was eventually promoted to General Manager.  At all times relevant and material hereto, Plaintiff was the General Manager of the Moon Township store, Donald Trischler was Macon's District Manager, Anne Cashman was the Assistant General Manager, and Bridget Weaver was the Assistant Manager. Ms. Cashman and Ms. Weaver reported to Plaintiff.

The General Manager is considered to be the highest ranking position at a particular King's location.  It is the General Manager's responsibility to be in control of the store.  The General Manager is responsible for the scheduling of managers and disciplining employees.  The General Manager reports to the District Manager, who oversees several King's locations in the district.

On November 14, 2004, Ms. Weaver was opening the store between 5:30 and 6:00 a.m.  She climbed on a step ladder to turn on the "open" sign.  While on the ladder, Ms. Weaver slipped and fell.

Defendant maintains an employee handbook which contains policies and procedures.  Defendant has a policy regarding accidents that occur at work.  If an accident occurred at one of Defendant's stores, the manager on duty was required to fill out an accident report and administer a drug test.  Defendant requires that an accident form be filled out when an injury or the possibility of an injury occurs.  The accident form states that it must be completed by the manager on duty before the end of the day.  Mr. Trischler stated that the purpose of the drug test in conjunction with an accident was to ascertain whether the cause of the accident

was drug related.  If it was drug related, Defendant may not be liable for workers compensation.

Ms. Weaver did not fill out an accident report or take a drug test that day. After Ms. Weaver advised Plaintiff of her intention not to file a report, Plaintiff advised Ms. Weaver that it was good she was not filling out an accident report because the safety bonus was the only bonus the store would probably receive.[2] Plaintiff never directed Ms. Weaver to fill out the accident report or to take the drug test.

Plaintiff and Ms. Weaver worked together again a few days after the accident. Ms. Weaver approached him again about the accident and said her back was not getting any better and that she wanted to fill out an accident report.  Plaintiff admits that he told Ms. Weaver "That's your decision.  You got to make it. You made the decision not to fill it out when this happened, and I think with this new drug policy which has only been in effect for seven or eight months they are not going to be happy about that.  You  made the decision not to fill it out, and now three days later you're in so much pain you need to fill it out.  That's your decision, you got to make it…it's your decision, I think they could even fire you."   Ms. Weaver asked Plaintiff to sign the accident form and the drug test, which Plaintiff did.

Ms. Weaver contacted Defendant's human resources department and safety department regarding the accident.  At the time of the incident, James Covelli was

---

[2]General Managers were eligible to receive two bonuses.  One was a regular bonus based on store financial performance, and the other was a safety bonus.  The bonuses were paid quarterly.  If the Moon Township location had one accident in a quarter, it was unable to receive a safety bonus.

3

the Employment Manager for Defendant and Pish was the Director of Human Resources. The Employment Manager's responsibilities include investigations regarding employees. The implementation of the drug testing policy as part of the accident investigating protocol was largely due to Mr. Covelli's initiative.

The handbook also sets forth certain violations for which an employee may be immediately terminated. One of those violations is for coercing or intimidating another employee.

Mr. Trischler first became aware of Ms. Weaver's accident when Mr. Pish contacted him. Mr. Pish told Mr. Trischler that Ms. Weaver had fallen off a ladder and had wanted to fill out an accident report, but was told that she should not fill out the accident report. Mr. Pish directed Mr. Trischler to investigate Ms. Weaver's claims. Mr. Trischler requested that Mr. Covelli participate in the investigation and the two of them took written statements from Ms. Cashman and Ms. Weaver. Mr. Trischler also testified that he thought a third written statement might have been obtained from Patter Harpster.

Ms. Cashman stated that she found out about Ms. Weaver's accident on Tuesday, November 16, two days after it occurred. It was Cashman's first day back to work after a vacation. She was informed by another employee that Ms. Weaver fell but did not fill out an accident report.

After taking written statements, Mr. Trischler and Mr. Covelli met with Plaintiff to discuss Ms. Weaver's allegations. Plaintiff was presented with written statements from Ms. Weaver and Ms. Cashman at the meeting. Plaintiff was able to review the

written statements. Another meeting was set for the next day. Mr. Covelli, Mr. Trischler, Mr. Macon, and Ms. Weaver attended that meeting. During the investigation, Macon refuted that he coerced or intimidated Ms. Weaver but admitted that he told Ms. Weaver that the managers would receive a bonus if she did not submit an accident report.

Based upon the written statements and the interviews, Covelli considered Plaintiff's behavior to be coercive and intimidating. In particular, Covelli believed that Plaintiff coerced Ms. Weaver into not filling out a report so that the store would receive its safety bonus and that Plaintiff intimidated Ms. Weaver by telling her that King's would believe that Ms. Weaver was on drugs if she filled out an accident report after the fact. Mr. Covelli found Ms. Weaver's statement more credible than Plaintiff's version of the events surrounding the untimely filing of Weaver's accident report because he had the supporting statement of Cashman.

Mr. Trischler believed Ms. Weaver's version of the events over Plaintiff's because Ms. Weaver's version never varied in her account while Plaintiff's statements contained inconsistencies. For example, in one telling of his side of the story, Plaintiff stated he advised Ms. Weaver to fill out the report and in another telling he could not remember whether he so advised her. Mr. Trischler told Plaintiff that he was being discharged because they believed Ms. Weaver's story that Plaintiff coerced her into not filling out an accident report. Mr. Trischler did not consider whether Ms. Weaver did not fill out the accident report because she feared the drug test.

Plaintiff commenced this suit against Defendant asserting a number of claims. The claims remaining in Plaintiff's Amended Complaint are as follows: 1) an age discrimination claim in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §626(c)(1); 2) a gender discrimination claim in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000(e), *et seq.*; and 3) and an age and gender discrimination claim in violation of the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §951, *et seq.*

## II. LEGAL ANALYSIS

### A. Legal Standard of Review

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence creates no genuine issue

of material fact. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir. 1987). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. *Id.* Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex*, 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id*. at 324. Summary judgment must therefore be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988), *quoting, Celotex*, 477 U.S. at 322.

B. <u>ADEA, Title VII, and PHRA</u>[3]

    Defendant alleges that it is entitled to summary judgment as to Plaintiff's age

---

[3] It is well established in the Third Circuit that discrimination claims brought pursuant to Title VII, the ADEA, and the PHRA are all analyzed similarly under the *McDonnell Douglas* "shifting burden" paradigm. *Gomez v. Allegheny Health Services, Inc.,* 71 F.3d 1079, 1084 (3d Cir. 1995), *cert. denied,* 518 U.S. 1005 (1996) (the PHRA and Title VII are "construed consistently");*Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 157 (3d Cir.1995); *see, Kelly v. Drexel University,* 94 F.3d 102, 105 (3d Cir.1996); *Kocian v. Getty Refining & Marketing Co.,* 707 F.2d 748, 752 n. 3 (3d Cir.1983) (Title VII and the ADEA are construed similarly); *Walton v. Mental Health Ass'n of Southeastern Pennsylvania,* 168 F.3d 661, 666 (3d Cir.1999). Therefore, my analysis above, although expressed in general discrimination terms, applies equally to Plaintiff's claims of discrimination pursuant to Title VII, the ADEA, and the PHRA.

and gender discrimination claims because there is no genuine issue of material fact that King's reason was a pretext for discrimination. (Docket No. 21, pp. 1-2). Plaintiff alleges that he was fired by Defendant because of his age and his gender in violation of the ADEA, Title VII, PHRA.  *See,* Amended Complaint.  There are two avenues for proving Plaintiff's discrimination claims: (1) direct evidence under a "mixed motives" theory of liability,  *Price Waterhouse v. Hopkins,* 490 U.S. 228 (1989), or (2) circumstantial evidence of discrimination under a burden shifting theory of liability. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).  Both parties agree that this case is proceeding under the latter burden shifting theory of liability.

To prevail under the burden shifting analysis, Plaintiff must first establish a *prima facie* case of discrimination.  To establish a *prima facie* case of gender discrimination,[4] a plaintiff must prove: (1) that he is a member of a protected class, (2) that he suffered an adverse employment action (termination), and (3) the circumstances of the termination give rise to an inference of gender discrimination (e.g. that similarly situated nonmembers of the protected class were treated differently).  *McDonnell Douglas,* 411 U.S. at 802; *Goosby v. Johnson & Johnson Medical, Inc.*, 228 F.3d 313, 318-19 (3d Cir. 2000)*; O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 312-13 (1996); *Pivirotto v. Innovative Systems, Inc.,* 191 F.3d 344, 353-56 (3d Cir. 1999).  The primary purpose of evaluating the *prima facie* case is to "eliminate the most obvious, lawful reasons for the defendant's action."

---

[4]Defendant is not challenging Plaintiff's *prima facie* case regarding his age discrimination claims. (Docket No. 22, pp. 7-8).

8

*Pivirotto,* 191 F.3d at 352, *citing Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253-54 (1981). "The central focus …is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin." *Id.*, *quoting Furnco Constr. Corp. v. Waters,* 438 U.S. 567 (1978).

In a reverse discrimination context, a problem arises because the plaintiff is necessarily a non-minority, and therefore, could never pass the first element of a *prima facie* case under Title VII. *Iadimarco v. Runyon,* 190 F.3d 151, 161 (3d Cir. 1999). Thus, the Third Circuit has developed a modified burden shifting analysis. *Id.* "[A]ll that should be required to establish a prima facie case in the context of 'reverse discrimination' is for the plaintiff to present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII." *Id*.

If a plaintiff is successful in establishing a *prima facie* case, the burden of production shifts to Defendant to articulate a legitimate, nondiscriminatory reason for terminating him. If Defendant meets this minimal burden, then Plaintiff must prove, by a preponderance of the evidence, that the articulated reason was mere pretext for discrimination. *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1108 (3d Cir. 1997). Throughout this analysis, however, the burden of proving intentional discrimination rests with Plaintiff. *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir. 1994). In other words, the burden of persuasion does not shift. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 509 (1993).

1. *Prima facie case*

Defendant first argues that Plaintiff cannot meet his burden of proving a *prima facie* case of reverse gender discrimination because "there is no evidence of similarly situated female employees who were treated more favorable than" Plaintiff. (Docket No. 21, ¶3, Docket No. 22, pp. 4-7). The first step is to determine if there are similarly situated females. Such an inquiry is fact intensive and must be performed on a case-by case basis. *Monaco v. Am. Gen. Ass. Co.,* 359 F.2d 296, 305 (3d Cir. 2004).

Plaintiff identifies Ms. Weaver and Ms. Cashman as similarly situated females. (Docket No. 26, pp. 8-10). Plaintiff and Defendant, however, do not focus on the proper factors to determine whether Ms. Weaver and Ms. Cashman are similarly situated. Defendant focuses on the allegation that Plaintiff intimidated and coerced Ms. Weaver into not filing a report and into not taking a drug test immediately as the factors to be considered. (Docket No. 22, pp. 6-7). Plaintiff focuses on the conduct of Plaintiff, Ms. Weaver, and Ms. Cashman in all failing to file a report and failing to take a drug test or requiring that one be taken. (Docket No. 26, pp. 8-10). At the *prima facie* stage, the focus is not on the conduct of the employees to determine whether they were similarly situated. Rather, in determining whether employees are similarly situated, the focus is on the job that the Plaintiff and the comparators perform. *See, Monaco,* 359 F.3d at 305-06; *Anderson v. Consolidated Rail Corp.,* 297 F.3d 242, 249-50 (3d Cir. 2002).

Consequently, Plaintiff fails to argue how the jobs, duties, level of supervisory

responsibility, salary, or other factors relevant to the particular workplace of Ms. Weaver and Ms. Cashman were substantially equal to his. *See,* Docket No. 26, pp. 8-10. What is evident to me by the submissions of the parties, however, is that all of these persons have the word "manager" in their title and that it is the duty of the manager on duty to fill out accident reports and administer drug tests. (Docket No. 28, ¶38). A *prima facie* case should not be an onerous hurdle to overcome. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981); *Scheidemantle v. Slippery Rock University State Sys. of Higher Ed.,* 470 F.3d 535, 539 (3d Cir. 2006). Thus, based on the evidence produced by the parties I find that Ms. Weaver and Ms. Cashman were similarly situated to Plaintiff.

2. *Defendant's reason for Plaintiff's termination*

The burden of production next shifts to Defendant to articulate a legitimate, nondiscriminatory reason for terminating Plaintiff. *Hicks,* 509 U.S. at 509. This stage does not involve a credibility assessment in which I must weigh the evidence of discriminatory action against the reason proffered for the employment action. It is sufficient that Defendant introduce evidence which, if taken as true, would permit the jury to find that its proffered nondiscriminatory reason for the adverse action was legally sufficient to justify the action. *Id.* Defendant's reason for terminating Plaintiff is that he coerced and intimidated an employee into not completing an accident report and drug test. (Docket No. 22, pp. 7-8). Plaintiff concedes this is a legitimate, non-discriminatory reason for terminating Plaintiff. (Docket No. 26, pp. 12-13). Therefore, I move to the next step to determine if

Plaintiff can show that the articulated reason was mere pretext for discrimination. *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1108 (3d Cir. 1997).

   3. <u>Pretext</u>

To succeed on this element of the burden shifting test, Plaintiff must now point to evidence from which a reasonable fact finder could conclude either: (1) that the employer's articulated legitimate reasons are unworthy of belief (i.e. pretextual), or (2) that unlawful discrimination "was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes,* 32 F.3d at 764; *Sheridan v. E.I. Dupont de Nemours and Co.,* 100 F.3d 1061 (3d Cir. 1996), *cert. denied,* 521 U.S. 1129 (1997). To disbelieve the employer's proffered reason, the question is not whether the action was prudent, but:

> the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incohererencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them "unworthy of credence"...and hence infer "that the employer did not act for [the asserted] non-discriminatory reasons"....

*Fuentes,* 32 F.3d at 765 (citations omitted). The evidence may be either direct or circumstantial and Plaintiff is not required to adduce evidence contradicting the specific reasons proffered by the defendant. *Antol v. Perry,* 82 F.3d 1291, 1300 (3d Cir. 1996).

Defendant argues that Plaintiff cannot adduce evidence sufficient to permit a reasonable jury to conclude that Defendant's proffered reason for firing Plaintiff (coercion and intimidation) was not the true reason or that his age and/or his

gender were more likely than not the determinative factor. (Docket No. 22, pp. 8-14; Docket No. 30, pp. 1–8). In opposition, Plaintiff does not make any substantive argument regarding the second prong of the *Fuentes* test.[5] (Docket No. 26, p. 14). Rather, Plaintiff's argument is focused on creating a genuine issue under the first prong of the *Fuentes* test. Consequently, I will focus my analysis on whether Plaintiff has met his burden of showing a genuine issue that employer's articulated legitimate reason is unworthy of belief.

With regard to the first prong, Plaintiff argues that the "investigation into the events which led to Plaintiff's termination were (sic) so one-sided and justified with such incoherencies that a reasonable jury could discredit the Defendant's articulated non-discriminatory reason for the Plaintiff's termination." (Docket No. 26, pp. 15-16). To that end, Plaintiff in essence argues that because he was a "kind" individual and that there were statements that indicate that Plaintiff was never observed intimidating or coercing any of his employees, that this is evidence of pretext. I disagree. This evidence has no relevance as to weaknesses, inconsistencies, incoherencies, or contradictions in Defendants proffered non-discriminatory reason. *See, Martin v. Health Care & Retirement Corp.,* 67 Fed. Appx. 109 (3d Cir. 2003) (co-workers' opinions that plaintiff would not have engaged in the conduct for which

---

[5]With regard to the second prong of the *Fuentes* test, Plaintiff, in a footnote, makes the following statement: "With respect to the second prong of Fuentes, this Plaintiff contends that simply because the Defendant did not discriminate against the Plaintiff at the first available opportunity is not evidence that the Defendant did not ultimately discriminate against him." (Docket No. 26, p. 14, n. 8). This statement is wholly insufficient to meet the burden under the second prong of *Fuentes.* It in no way tends to prove that the alleged unlawful discrimination "was more likely than not a motivating or determinative cause of the adverse employment action." Consequently, I find that Plaintiff has failed to meet his burden under the second prong of the *Fuentes* test.

she was discharged are insufficient to show that the decision-makers were lying in their belief that plaintiff engaged in the conduct).

In a footnote, Plaintiff "redirects the Court's attention to his argument that the investigation...was conducted in a manner favorable to the female accuser and female Assistant General Manager and to the detriment of the Plaintiff...." (Docket No. 26, p. 15, n. 10). In the prior section of his brief, Plaintiff first argues that during the investigation, Defendant obtained written reports of females, but not of Plaintiff. (Docket No. 26, p. 6). Even if Defendant was remiss in not obtaining a written statement of Plaintiff, such evidence does not support an inference of pretext. *See, Martin,* 67 Fed. Appx. at *3, *citing Fuentes,* 32 F.3d at 766-67 (failure to give plaintiff a chance to tell her side of the story cannot support a finding of pretext).

The question, however, is whether there are weaknesses, implausibilities, inconsistencies, incohererencies, or contradictions in Defendant's proffered legitimate reasons for its termination that a reasonable fact finder could rationally find them unworthy of credence. Viewing the evidence in the light most favorable to Plaintiff, I find there are genuine issues of fact casting weaknesses in Defendant's proffered legitimate reason. For example, Defendant admits that Plaintiff did not make any comment to Ms. Weaver regarding the bonuses until after she decided not to fill out a report. In addition, a few days later Plaintiff signed the accident report. Therefore, I find that Plaintiff has met his burden under the pretext prong of the burden shifting test.

Accordingly, viewing the evidence in the light most favorable to Plaintiff, I find Plaintiff has raised genuine issues sufficient to permit a reasonable jury to conclude that Defendant's proffered reason for firing Plaintiff was not the true reason but a mere pretext for unlawful age and gender discrimination. Therefore, summary judgment is not warranted.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### ORDER OF COURT

AND NOW, this **7th** day of May, 2007, after careful consideration of Defendant's Motion for Summary Judgment (Docket No. 21) and the submissions of the parties, it is ordered said Motion (Docket No. 21) is denied.

A settlement conference is scheduled for Tuesday, May 22, 2007 at 10:30 A.M. before the undersigned. Counsel are to have settlement authority and parties are to be either present or available by telephone. Position letters are to be faxed three (3) days prior to the conference.

BY THE COURT:

/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge